IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA MEYER SIMON, CHERYL SRONCE, LYTISHIA JONES, TRACEY EDWARDS, LEANNA HILL, SARAH JACKSON, JESSICA MCGLOWN, LISA TRENT, SARAH WARD, RITA COLLINS (as personal representative for her daughter, Rita Williams), ROBIN RAINS, on behalf of themselves and all others similarly situated, | ) | Case No. 4:25-cv-1144 |
| Plaintiffs, | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| LEADEC CORP., | ) | |
| 1500 Route A<br>Wentzville, MO 63385 | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiffs Amanda Meyer Simon, Cheryl Sronce, Lytishia Jones, Tracey Edwards, Leanna Hill, Sarah Jackson, Jessica Mcglown, Lisa Trent, Sarah Ward, Rita Collins (as personal representative for her daughter, Rita Williams), and Robin Rains, on behalf of themselves and all others similarly situated, complain as follows against Defendant Leadec Corp. (Leadec):

## NATURE OF THE CASE

1. This is a civil rights class action complaint brought by Plaintiffs on behalf of themselves and all other similarly situated women to remedy sex discrimination and retaliation in employment at Leadec Corporation in Wentzville, Missouri at the General Motors (GM) plant—in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

2. During the time period relevant to this lawsuit, Leadec employed hundreds of women in Wentzville, Missouri at the GM plant, each of whom was exposed to a sexually hostile work environment. Accordingly, the potential class-size is far too numerous for joinder to be practical. Accordingly, plaintiffs seek to certify a single class of women who were employed by Leadec in Wentzville, Missouri at the GM plant at any time from Summer 2011 through Fall 2022 in two subclasses: bargaining unit custodial employees and on-site non-bargaining unit employees.

3. All class members endured pervasive sexual harassment as the result of: (a) the vulgar, offensive, and demeaning sexual conduct that a group of men directed at them, not because of their individual characteristics but because they were women, (b) the Defendant's refusals or failures to take adequate steps reasonably calculated to curtail that harassment and (c) adverse terms and conditions of employment that and other actions that were motivated by retaliation when they complained about the sex discrimination. This sexual harassment and retaliation occurred on a daily or nearly daily basis throughout the Wentzville plant and was an ongoing issue from at least Summer of 2011 to at least September, 2019. The retaliation continued well after September, 2019.

4. The harassment to which class members were subjected is egregious. Male co-workers in positions of power over them routinely: (a) groped and grabbed them; (b) subjected them to a daily barrage of sexualized epithets, insults, comments, and gestures; (c) threatened and committed sexual violence against them; (d) offered them benefits for being sexually complicit and threatened them with adverse repercussions if they were not. On information and belief, at least two female employees were subjected to gang rape at the facility.

5. By contrast, male personnel were rarely, if ever, subjected to similar harassment because of their sex.

6. Defendant tolerated and fostered this harassment and retaliation, exhibiting deliberate indifference to it for almost ***eight years***.

7. Defendant provided less protection to female employees when they are sexually harassed than to male employees experiencing other forms of abuse. By providing less protection, Defendant created a more dangerous and hostile work environment for women than for men.

8. The harassment of female employees was so frequent, pervasive, unwelcome, and consistently traumatizing — including at least two gang rapes on the premises that it made Leadec an objectively abusive, hostile, oppressive, and dangerous workplace for class members, adversely changing the terms and conditions of their employment compared to men who work in the same job titles.

9. Defendant was aware of this harassment. The harassment was open and obvious and local management participated. Moreover, class members made hotline complaints about it. Despite being on notice of pervasive problems of sexual harassment Defendant failed to address such unlawful sexual harassment and the company culture that enabled it. Defendant paid lip service to training its staff but did nothing to assure such training actually took place or actually succeeded in preventing harassment. Defendant's on-site and corporate managers did not respond promptly and adequately to harassment complaints and Leadec did nothing to hold accountable those managers who allowed harassment to flourish.

10. Despite Defendant's knowledge of the harassment that class members suffered daily at the Wentzville GM plant did not take steps reasonably calculated to curtail it.

11. By failing to timely take such steps, Defendant enabled the harassment. As a matter of standard operating procedure, it tolerated a workplace in which men regularly propositioned women, bombarded women with sexually vulgar epithets, gestures, and threats, and committed sexualized assaults and batteries against women. Defendant bears legal responsibility for a workplace in which, for most of the class period, men were rarely, if ever, disciplined for this harassment; and women who complained about it were retaliated against, given adverse job assignments, denied promotions and other job opportunities, threatened with discipline and disciplined, ridiculed, ignored, threatened with physical or sexual violence, stalked, their personal property was damaged, and/or they were constructively discharged.

12. No woman should have to endure such harassment or retaliation as a term or condition of employment. If harassment or retaliation similarly severe and pervasive were directed at men over such a sustained period, the Defendant would not tolerate it.

13. By contrast, Defendant has consistently been indifferent—or worse—to sexual harassment directed at female personnel.

14. This sexual harassment of women working at the Wentzville GM plant could have been curtailed. Pervasive sexual conduct by males against females are not the norm at other automotive plants or other industrial cleaning sites. Well-managed facilities prevent or minimize this type of misconduct.

15. Addressing this harassment is not optional. The law requires employers to take adequate measures to reduce sexual harassment. Women working in industrial janitorial services and/or in the automotive industry are entitled to the same diligent protection against sexual harassment as employees in other workplaces. *See Sandoval v. American Bldg. Maintenance*

*Industries,* 578 F.3d 787, 802-03 (8th Cir. 2009) *Mays v. Williamson & Sons*, 775 F.2d 256, 259-60 (8th Cir. 1985); *Lynn v. TNT Logistics North America Inc.,* 275 S.W.3d 304, 308-10 (Mo. app. 2008)(automotive industry).

16. The first step toward curtailing sexually abusive and harassing behavior would have been for Defendant to make the decision that the behavior would not be tolerated. The second would have been for the Defendant to discipline harassers. Defendant failed to take either of these steps for eight years.

17. Leadec is an international employer with approximately 23,000 employees at approximately 350 locations. Unless this Court awards substantial monetary damages, Defendant will continue to tolerate sexual harassment of women at other locations across the country and the world.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this case under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). The acts that gave rise to the claims alleged in this Complaint occurred within the geographical boundaries of the United States District Court for the Eastern District of Missouri.

## PARTIES

20. Plaintiffs Amanda Meyer Simon, Cheryl Sronce, Lytishia Jones, Tracey Edwards, Leanna Hill, Sarah Jackson, Jessica Mcglown, Lisa Trent, Sarah Ward, are, or during the class period were, female industrial cleaners employed by Defendant at the Wentzville Plant of General Motors. Plaintiff Rita Collins is the mother and personal representative of a deceased female industrial cleaner employed by Defendant at the

Wentzville Plant of General Motors during the class period.

21. Defendant Leadec Corp. (Leadec) is an international industrial services company based in Germany, with Ohio as its principal state of business in the United States. It is registered as a foreign corporation in Missouri. Leadec is an employer within the meaning of 42 U.S.C. §2000e(b) and 29 U.S.C. § 203(d) with more than 500 employees.

22. Leadec was a direct employer of custodial personnel at the Wentzville General Motors assembly plant from on or about 2017 through 2022.

23. Leadec purchased Voith Industrial Services, Inc. (Voith) in 2017. Voith was a direct employer of the custodial personnel at the Wentzville General Motors assembly plant from on or about 1995 through 2013.

24. At most times relevant to this complaint, Leadec was an employer, or alter ego/joint-employer, of all Plaintiffs and all members of the proposed class, including as a signatory to collective bargaining agreements governing their employment.

25. Plaintiff Meyer filed a class-wide discrimination and retaliation charge with the Equal Employment Opportunity Commission (EEOC) on or about September 27, 2019. She received a favorable determination letter from the investigation on September 13, 2023. Following failure of conciliation, Meyer received a Notice of Right to Sue (NRTS) on May 1, 2025. A true and accurate copy of Meyer's charge, determination letter and NRTS are attached and incorporated here as Exhibit 1.

26. Plaintiff Sronce filed a class-wide discrimination and retaliation charge with the EEOC on or about October 17, 2019. She received a favorable determination letter from the investigation on or about September 13, 2023. Following failure of conciliation, Sronce received

a NRTS on May 1, 2025. A true and accurate copy of Sronce's charge, determination letter and NRTS are attached and incorporated here as Exhibit 2.

27. Plaintiff Jones filed a class-wide discrimination and retaliation charge with the EEOC on or about October 3, 2019. She received a favorable determination letter from the investigation on or about September 13, 2023. Following failure of conciliation, Jones received a NRTS on May 1, 2025. A true and accurate copy of Jones' charge, determination letter and NRTS are attached and incorporated here as Exhibit 3.

28. Each of the letters of determination referenced above concluded in relevant part:

> that from at least September 27, 2017, through at least January 30, 2019, Respondent [Leadec] subjected a class of female employees (Class Members) to unwelcome sexual advances, as well as other verbal and physical conduct of a sexual nature by other male Leadec employees. The investigation also established that the harassment explicitly and implicitly affected Class Member's employment, unreasonably interfered with Class Member's work performance, and created an intimidating, hostile, and offensive work environment. Additionally, the evidence shows that after Class Members complained of sexual harassment in January of 2019, they were harassed and intimidated in retaliation for having participated in protected activity. Evidence confirms that Respondent was aware of the inappropriate conduct of a sexual nature, harassment, and other retaliatory actions, but failed to take prompt and appropriate corrective action to cease the behavior in the workplace.

29. Plaintiffs have filed this lawsuit within ninety (90) days of receiving their NRTSs.

30. The time scope of this lawsuit is appropriate under the continuing violation doctrine recognized by the U.S. Supreme Court, because the sexually hostile work environment and hostile retaliatory work environment extended from 2011 through 2022.. *See e.g., National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 116 (2002); *see also, Rowe v. Hussman Corp.,* 381 F.3d 775, 782 (8th Cir. 2004); *Pruitt v. City of Chicago, Ill.,* 472 F.3d 925, 927 (7th Cir. 2006); *Pesce v. Mendes & Mount LLP,* 2020 WL 7028641 at *4 (S.D.N.Y. 2020)

(multi-year failure to stop sexual harassment and assault is actionable under doctrine because of a single timely incident).

## FACTUAL ALLEGATIONS

31. Plaintiff Amanda Meyer Simon worked as an industrial custodian for Leadec and its predecessors/successors at the Wentzville, Missouri General Motors plant from on or about October 6, 2008, until on or about September 30, 2020, after she developed post- traumatic stress disorder as a result of exposure to sexual harassment. She was repeatedly subjected to severe sexual harassment, including sexual propositions, epithets, slurs, and catcalling; and actual and threatened retribution for not participating in the sexual conduct. She began complaining about sexual harassment beginning in Summer 2011, going to her various supervisors and to on-site Human Resources personnel. Leadec failed to take timely and effective action. Leadec finally fired the three primary instigators almost *eight years after* her first complaint, and it never stopped the retaliation. On or about September 27, 2019, she filed a class charge of sex discrimination and retaliation by Leadec with the Equal Employment Opportunity Commission (EEOC).

32. Plaintiff Cheryl Sronce worked as an industrial custodian for Leadec and its predecessors/successors at the Wentzville, Missouri General Motors plant from 2012 until Leadec lost its contract with General Motors in 2022 and she was a Team Lead throughout. She was repeatedly subjected to severe sexual harassment, including unwelcome touching, sexual propositions and inuendo, observing male co-workers publicly rubbing female co-workers' breasts and buttocks, and narrowly escaping forced sexual assault at work. For example, in pressing Sronce to have sex with him, Presberry told her that his wife was a Pisces, so she was not very sexual and also said that he had never had sex with a white girl. He also screamed at her in front

of team members because she would not comply with his sexual demands. He also tried multiple times to have her voted out of union office by raising false charges against her. Sronce complained about sexual harassment and retaliation, including by filing grievances and speaking with supervision and facility management. Leadec only fired the three primary instigators almost seven years after her first complaint, and it never stopped the retaliation. Leadec failed to take timely and effective action to end the harassment and retaliation. As a result, Sronce suffers from such severe post traumatic stress disorder that she wanted to commit suicide when she was required to testify against Presberry at arbitration. On or about October 17, 2019, she filed a class charge of sex discrimination and retaliation by Leadec with the EEOC.

33. Plaintiff Lytishia Jones worked as an industrial custodian for Leadec and its predecessors/successors at the Wentzville, Missouri General Motors plant from August 30, 2016 until Leadec lost its contract with General Motors in 2022. She was repeatedly subjected to severe sexual harassment, including unwelcome touching, sexual propositions and inuendo, observing male co-workers publicly rubbing female co-workers' breasts and buttocks, finding a victim of sexual assault unconscious in a restroom. She complained about sexual harassment, including by filing hotline complaints, texting with the corporate human resource manager, Carole Franco, complaining to on-site supervisors and human resource management. Leadec only fired the three primary instigators almost eight years after Meyer's first complaint and 2.5 years after Jones' first complaint, and it never stopped the retaliation. Jones suffers from post-traumatic stress disorder, pseudotumor cerebri, stress-related sleep issues and other nervous disorders as a result of the hostile work environment and retaliation she experienced at Leadec. On or about

October 3, 2019, Jones filed a class charge of sex discrimination and retaliation by Leadec with the EEOC. Leadec failed to take timely and effective action.

34. Plaintiff Tracey Edwards worked as an industrial custodian for Leadec and its predecessors/successors at the Wentzville, Missouri General Motors plant from on or about July 6, 2017 until she was laid off in March 2020 due to Covid-19 and was never recalled. She was repeatedly subjected to severe sexual harassment, including unwelcome touching, sexual propositions and inuendo, observing male co-workers publicly rubbing female co-workers' breasts and buttocks. She complained about sexual harassment, including by reporting orally and in writing to on-site human resource and facility management, corporate human resource manager Carole Franco, and others. Leadec only fired the three primary instigators almost eight years after Meyer's first complaint and almost two years after Edwards' first complaint, and it never stopped the retaliation.

35. Plaintiff Leanna Hill worked as an industrial custodian, then a Team Lead, and finally as a first-line supervisor for Leadec and its predecessors/successors at the Wentzville, Missouri General Motors plant from March 2015 until January 10, 2019, when she was fired by Leadec. She was repeatedly subjected to severe sexual harassment, including being thrown up against a wall in front of a group of employees and told by a male co-worker, DeAngelo Presberry, "I'm going to fuck you." Presberry had said similar things to her repeatedly since late 2016. For example, Presberry told Hill, "I wanna fuck you in the ass," and "bend over so I can fuck you," among other things. Presberry repeatedly touched her thigh and flirted with her. Hill always let him know that his behavior was unwelcome. She complained about sexual harassment to Defendant's head on-site supervisors, to on-site Human Resources, and to Corporate Human

Resource Manager Carole Franco. She also complained to on-site Human Resources, and to Corporate Human Resources about retaliation for bringing her sexual harassment complaint, including to Carole Franco less than one month before she was summarily discharged. Her complaints were to no avail and she was retaliatorily discharged as a result.

36. Plaintiff Sarah Jackson worked as an industrial custodian for Leadec and its predecessors/successors at the Wentzville, Missouri General Motors plant from 2016 until March 2019, when she quit after being harassed for coming forward with her sexual harassment complaints. She was repeatedly subjected to severe sexual harassment, including being invited to orgies, other sexual propositions, being told she could not get her seniority benefits, tuition reimbursement or promoted unless she went through Presberry. She complained about sexual harassment orally and in writing to on-site Financial Manager (and former Human Resources employee for General Motors) Robin Rains in approximately August 2019. Rains passed on her complaint to Corporate Human Resource Manager Carole Franco, but then Rains was fired in September 2019, in retaliation for supporting Jackson and other women against the rampant sexual harassment at Leadec in the Wentzville General Motors plant. Thereafter Jackson was retaliated against. Jackson also filed an earlier discrimination charge about co-worker and supervisory sexual harassment with the EEOC, which was then apparently misplaced by the EEOC. Her complaints were not timely dealt with and she experienced retaliation until the day she quit.

36. Plaintiff Jessica McGlown worked as an industrial custodian for Leadec and its predecessors/successors at the Wentzville, Missouri General Motors plant from November 2016 until January 11, 2018, when she was fired for absenteeism related to being sexually harassed and

retaliated against. McGlown developed post-traumatic stress disorder and related disorders as a result of exposure to sexual harassment. She was repeatedly subjected to severe sexual harassment, including being invited to "sex parties," sexual propositions and inuendo, stalking, epithets and an implicit threat of violence when Presberry got so mad at her that he punched a wall, hurting his hand. After she rejected him repeatedly, he called her a "slut" and a "whore." She was also denied overtime, grievance representation and other benefits because she would not have sexual relations with Presberry. She complained about sexual harassment, including by speaking with on-site human resource management more than ten times. She did not file written complaints because Presberry was the person who trained the employees about the sexual harassment policy and because all written complaints went through him. Her complaints were to no avail. After she was discharged, McGlown was told by Presberry that he would get her job back "if you screw me."

37. Plaintiff Lisa Trent worked as an industrial custodian for Leadec and its predecessors/successors at the Wentzville, Missouri General Motors plant from 2008 until March 2024. She was repeatedly subjected to a severely sexually hostile work environment, including sexual propositions and inuendo. When she was working with Presberry in 2016 after he learned that she had formerly dated a black man who worked at General Motors, he said "If I knew you had dated a black man, I'd have tried to Fuck you a long time ago." This sexualized statement was unwelcome. Trent promptly complained about this sexual harassment in 2016 to a male Leadec supervisor, who she later learned was involved in trading favors with Presberry. The supervisor told her that "if no one else saw it or heard it, it didn't happen." Nothing came of her complaint. She then complained again to Cheryl Hertfelder in January 2019.

38. Plaintiff Sarah Ward worked as an industrial custodian for Leadec and its predecessors/successors at the Wentzville, Missouri General Motors plant from February 7, 2014 until July 25, 2018, when she left and began working for MPS in the same facility. Ward was repeatedly subjected to a severely sexually hostile work environment, including sexual propositions and inuendo, stalking, and epithets. One of the men, Presberry, came up to her repeatedly, grabbed his crotch in front of her, and asked if she wanted some "black dick." He made daily sexualized comments to her, such as "damn your ass looks good." Ward complained about sexual harassment and also wrote up statements for other women about harassment by Presberry and others, which included photographs and other evidence. Presberry found the statements and evidence locked in Ward's locker. Leadec management and security helped Presberry remove Ward's personal lock so Presberry could get to the evidence of sexual harassment, which he then destroyed. Ward's complaints were to no avail. When she would not participate in his sexual fantasies and instead assisted others in complaining, Presberry and others began retaliating against her, including damaging two of her cars and stalking her. Ward had to move residences multiple times. Ward suffers from post-traumatic stress disorder as a result of the hostile and retaliatory work environment at Leadec, which has caused her to take medication, go through counseling, and take Family Medical Leave. She left Leadec as a result of the hostile work environment and retaliation.

39. Plaintiff Rita Collins is the Personal Representative for her deceased daughter Rita Williams. Rita Williams worked as an industrial custodian for Leadec at the Wentzville, Missouri General Motors plant from on or about mid-2018 until on or about late 2019. Williams was repeatedly subjected to a severely sexually hostile work environment, including sexual

propositions and inuendo, stalking, and epithets. On information and belief, in early 2018, she was gang-raped by a group of men at the Wentzville GM plant and left passed out in a state of undress and semen in a women's bathroom. She developed post- traumatic stress disorder and addiction as a result of exposure to this sexual harassment. Williams was subsequently discharged due to issues caused by the sexual harassment.

40. Plaintiff Robin Rains worked for Leadec (and its alter ego, Voith) on the industrial custodial side at the General Motors plant in Wentzville for 20 years, from 1995 through 2013 and again from May 2017 through August 2019. Rains was the Office Manager through 2013. She then worked for Voith successor, Jone Lang Lasalle for one year, starting as Office Manager and then being promoted to Planner. Rains then worked in Human Resources for General Motors. When Leadec resumed its contract with General Motors/Wentzville in 2017, Rains began working there as local Human Resources until November 2017, when she was promoted to Financial Manager at the same location. During her time in Human Resources, Rains passed on sexual harassment complaint statements to Corporate Human Resource manager Tim Bauer via email. In her role as Financial Manager, Rains passed on Sarah Jackson's sexual harassment complaint statement to Corporate Human Resource manager Carole Franco via email in Summer 2019, approximately August 2019. Rains was fired by Leadec within 30 days of doing so, allegedly because the Wentzville financial documents were in disarray. However, Rains had just received a performance award from Leadec 60-90 days before her termination and she had never received any counseling or warning about her performance prior to her termination. On information and belief, Rains was discharged due to raising Jackson's sexual harassment complaint with Corporate Human Resources manager Franco.

41. Class members working for Leadec in all parts of the General Motors plant experienced the same types of harassment as Plaintiffs. Class members worked in an environment where, sometimes on a daily basis, male co-workers engaged in one or more of the following extreme forms of sexual harassment:

**a.** Made lewd gestures at class members;

**b.** Physically assaulted class members, including by rubbing their thighs or sexually assaulting them, sometimes as a gang rape;

**c.** Made threats of sexual violence, such as:

- "I am going to fuck you,"
- "I wanna fuck you in the ass,"
- "bend over so I can fuck you,"

**d.** Hurled sexual epithets, such as "slut," bitch," and "whore."

**e.** Made other vile sexualized comments, such as: "Do you want some black dick?," "I'll get your job back if you screw me," and "If I knew you'd dated a black man, I'd have tried to Fuck you a long time ago."

**f.** Commented on class members' breasts, buttocks, curves, shape, weight, or size.

42. Defendant's supervisors and managers routinely deterred, discouraged, or prevented class members from reporting the sexual harassment they were subjected to, including by leaking the information that they intended to file a written complaint to the male harassers and then conspiring with the harassers to reassign, discipline and otherwise intimidate the class members.

43. After learning, or believing, that a class member had complained or was about to complain about their conduct, male harassers stalked class members, keyed their vehicles, got

them disciplined and/or fired.

44. Class members complained to Defendant of this retaliatory behavior in person, by hotline and in writing.

45. On information and belief, many supervisors refused to investigate complaints of sexual harassment and retaliation or to submit them to Defendant's Corporate Human Resources department in Ohio.

46. Other supervisors did report complaints of sexual harassment and retaliation to upper onsite management and to Corporate Human Resources in Ohio, but Defendant failed to take timely corrective action and conversely took inappropriate action, such as exposing women to retaliation by revealing their identities to the harassers without taking corrective action. Defendant also took adverse action against local management who reported sexual harassment to Corporate.

47. Defendant failed to take prompt corrective action in the face of multiple reports of sexual harassment and retaliation.

48. Class members also experienced:

a. Being disciplined for complaining and/or defending against sexual harassment.
b. Being called demeaning and insulting names after rejecting male advances or complaining about them, such as "bitch," "slut," "whore," "racist."
c. Being brought up on internal union charges for trying to defend themselves against sexual harassment.

49. Until 2019 when on-site Human Resource Manager Cheryl Hertfelder investigated and fired three of them, male co-workers who engaged in sexual harassment of class members

escaped punishment because: (a) Defendant's supervisors deterred class members from filing written complaints; (b) Defendant's supervisors "lost" written complaints of harassment and retaliation; (c) Defendant's supervisors told the harassers who had complained and where the complaints were maintained, then gave them access to the complaints, which then disappeared; and (d) when hotlined and written complaints of sexual harassment were filed, Defendant failed to investigate, or failed to adequately investigate.

50. Defendant was, or should have been, aware of both (a) the severe and pervasive sexual harassment of class members by male coworkers and supervisors, and of the longstanding failures of managers and Human Resource personnel to prevent or curtail it.

51. Defendant seldom, if ever, disciplined supervisors and investigators who ignored, minimized, or failed to pursue class members' complaints about sexual harassment by male co-workers.

52. Conversely, Defendant disciplined or constructively discharged supervisors and managers who attempted to stop the harassment of female employees.

53. Despite first-person reports of sexual harassment to Corporate Human Resource Manager Carole Franco, Defendant disclosed information about the complaints to the primary harassers and then failed to protect the women from the retaliatory consequences.

54. Defendant—while aware of the existence, scale, and severity of open and obvious sexual harassment—made decisions to continue to expose class members to it rather than take steps reasonably calculated to curtail it.

55. The inadequacy of Defendant's responses to the harassment of its female employees emboldened harassers to increase the frequency and severity of their harassment.

56. Defendant provided inadequate training to their employees about sexual harassment or steps to prevent it.

57. None of the Plaintiffs in this case has ever received adequate training about how to address sexual harassment. Despite policies and lip service to the contrary, and possibly fictional records of training, Defendant did not provide employees with that training.

58. The climate of pervasive sexual harassment that permeated Leadec impaired the ability of class members to do their jobs.

59. The vulgar, offensive, and demeaning sexual misconduct that male coworkers directed at class members, not because of their individual characteristics but because they are women, was severe and pervasive since 2011. Defendant, with knowledge of this harassment, failed or refused to take adequate steps reasonably calculated to curtail this harassment. The resulting hostile work environment and Defendant's failure to take adequate steps to curtail it was part of a continuing violation that began in 2011 and continued until Leadec lost its contract with the Wentzville General Motors plant in 2022.

60. This complaint seeks to impose liability for Defendant's perpetuation of a hostile work environment saturated with sexual harassment by failing to take adequate steps reasonably calculated to curtail that harassment of class members.

## CLASS ALLEGATIONS

61. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of female employees who worked for Defendant at the Wentzville General Motors plant at any time from 2011 until Defendant lost its contract in 2022 in two subclasses, industrial cleaning employees and local supervision and management.

62. All the named plaintiffs were at some point during the relevant period industrial cleaning employees of Defendant and therefore serve as class representatives of the subclass of industrial cleaning employees.

63. Plaintiffs Hill and Rains are the class representatives of the subclass of local supervision and management.

64. The proposed Class Representatives are each members of the subclasses they seek to represent. The proposed class definitions in paragraph 56, above, are intended to be subject to revision if facts suggest desirable or necessary refinements to them, including but not limited to the addition of subclasses, if appropriate.

65. Each of the subclasses proposed in paragraph 56 are sufficiently numerous that joinder of all members is impracticable.

66. Questions of fact and law common to the subclasses are both well-suited to class-wide adjudication and predominate over any questions affecting only individual class members. For each subclass, these common, predominating questions include:

(a) whether the sexual harassing conduct engaged in by male co-workers created a sexually hostile work environment for the female workers,

(b) whether Defendant's on-site and corporate management were, or reasonably should have been, aware of the sexually hostile work environment for members of the class,

(c) whether Defendant promptly took measures reasonably calculated to curtail that harassment;

(d) whether Defendant failed to put in place safeguards commonly used by other janitorial companies and/or automobile factories to curtail the harassment;

(e) whether Defendant's tolerance of a sexually hostile work environment for members of the class amounts to a pattern or practice of discrimination. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335-336 (1977); and

(f) whether Defendant retaliated against, or permitted co-worker retaliation against, class members who complained about sexual harassment.

67. The named plaintiffs' claims are typical of the claims of other class members in that each of them has experienced harassing conduct that has created a sexually hostile work environment for them, and Defendant did not promptly take measures reasonably calculated to curtail the harassment that each of them has experienced, including measures commonly used at other facilities in similar industries. The named plaintiffs' claims are also typical of the claims of other class members in that they experienced retaliatory conduct after complaining about being sexually harassed, in many cases resulting in their discharge or constructive discharge.

68. Plaintiffs will fairly and adequately represent and protect the interests of the class. They have retained experienced and accomplished counsel who are able and prepared to expend the resources necessary to litigate this case. A class action is superior to other methods for fairly and efficiently adjudicating this controversy. Alternatively, class-wide liability under the theories advanced in this complaint could properly be certified under Rule 23(c)(4).

**<u>Count 1</u>**
**Title VII — Hostile Work Environment**
(On behalf of All Plaintiffs and All Subclasses)

69. Plaintiffs repeat and re-allege all previous paragraphs of this complaint.

70. Because of their sex, both Plaintiffs and all other class members have been subjected to a hostile work environment, which was so severe and pervasive as to alter the

terms and conditions of their employment by Defendant.

71. At all relevant times, Defendant possessed both actual and constructive knowledge of the hostile work environment to which Plaintiffs and other members of the proposed class were subjected. Despite that knowledge, Defendant failed to promptly take adequate steps reasonably calculated to curtail the harassment that created that hostile work environment.

72. Defendant's acts and omissions constitute a pattern or practice of discrimination against Plaintiffs and other members of the proposed class.

73. The hostile work environment has existed since at least 2011 and Defendant failed to promptly take adequate steps reasonably calculated to curtail the harassment until 2019.

74. As a direct and proximate result of Defendant's failures to promptly take adequate steps reasonably calculated to curtail male co-workers' sexual harassment directed against female employees, Plaintiffs and all members of the proposed class have been injured and damaged.

**<u>Count 2</u>**
**Title VII — Retaliation**
(On behalf of All Plaintiffs and All Subclasses)

75. Plaintiffs repeat and re-allege all previous paragraphs of this complaint.

76. Because of their complaints of sexual harassment, Plaintiffs and many other class members were subjected to unlawful retaliation by Defendant, as well as by open and notorious, but unchecked retaliatory conduct by their harassers.

77. At all relevant times, Defendant possessed both actual and constructive knowledge of the retaliatory conduct to which Plaintiffs and other members of the proposed class were

subjected. Despite that knowledge, Defendant failed to promptly take adequate steps reasonably calculated to curtail the retaliation.

78. Defendant's acts and omissions constitute a pattern or practice of discrimination against Plaintiffs and other members of the proposed class.

79. As a direct and proximate result of Defendant's failures to promptly take adequate steps reasonably calculated to curtail retaliation directed against female employees who complained about sexual harassment, Plaintiffs and other members of the proposed class have been injured and damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and the Class pray that this Court:

**A.** Certify the claims in this complaint for class-wide adjudication, under Federal Rule of Civil Procedure 23.

**B.** Appoint Plaintiffs' Counsel as Class counsel pursuant to Rule 23(g)(1);

**C.** Declare that Defendant has engaged in conduct that deprives Plaintiffs and other class members of rights protected by Title VII;

**D.** Order Defendant to adopt and implement policies, procedures, and practices that will curtail harassment of women working at other Leadec locations within the United States of America;

**E.** Appoint an independent monitor to oversee Defendants' adoption and implementation of the required policies, practices and procedures, and to report to the Court;

**F.** Award Plaintiffs and the Class back pay and benefits, as appropriate;

**G.** Award Plaintiffs and the Class compensatory damages for physical and emotional distress and humiliation;

**H.** Order Defendants to pay Plaintiffs' reasonable attorney's fees and expenses, including expert costs; and

**I.** Order all other appropriate relief as the interests of justice may require.

## JURY DEMAND

Plaintiffs request a jury trial for all claims that may be tried to a jury.

Respectfully submitted,

**WORKERS RIGHTS LAW FIRM LLC**

/s/ Sherrie A. Hall
Sherrie A. Hall, Mo Bar. #40949
2258 Grissom Drive
St. Louis, Missouri 63146
Phone: (314) 824-0348
Fax: (314) 828-1029
sherrieworkersrights@gmail.com

and

**THE BAGSBY LAW FIRM LLC**

/s/ Larry Bagsby
Larry Bagsby, Mo Bar. #37296
119 S. Main Street
St. Charles, Missouri 63301
Phone: (636) 244-5595
larrybagsby@aol.com

Attorneys for Plaintiffs