**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMANDA MEYER SIMON, et al | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:25-cv-1144 |
| | ) | |
| LEADEC CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion to Strike Plaintiffs' Class Allegations and to Dismiss the Individual Claims of Eight Plaintiffs, Doc. [13]. For the reasons set forth below, the motion is denied.

### THE COMPLAINT[1]

From summer 2011 to fall 2022, Defendant Leadec Corporation employed hundreds of women at the General Motors (GM) plant ("the Plant") in Wentzville, Missouri, including on the custodial staff. Doc. [1] ¶¶ 2-3. Ten[2] such women bring this lawsuit alleging that Defendant "tolerated and fostered" pervasive sexual harassment of female employees and retaliation against those who complained. *Id.* ¶¶ 2-16.

Plaintiffs bring this suit under Title VII on behalf of themselves and a proposed class of women who worked for Defendant from summer 2011 through fall 2022. *Id.* ¶¶ 1, 61; Doc. [19] at 1; Doc. [24]. Plaintiffs propose two subclasses: (1) bargaining unit custodial employees; and (2) on-site non-bargaining unit employees. Doc. [1] ¶ 2. All Plaintiffs worked as industrial cleaning employees for Defendant at some point during the relevant period and plan to serve as class representatives for the first subclass. *Id.* ¶ 62. Plaintiff Leanna Hill is the proposed class representative for the second subclass because she worked as a Team Lead and then supervisor for Defendant from March 2015 until January 10, 2019. *Id.* ¶¶ 35, 63.[3]

[1] The Court accepts the factual allegations in the Complaint, Doc. [1], as true. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *see, e.g.*, *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1085 n.1 (8th Cir. 2021).

[2] One of the 11 original Plaintiffs, Robin Rains, voluntarily dismissed her cause of action. Doc. [19] at 1.

[3] Former Plaintiff Robin Rains was also a proposed representative of the second subclass. Doc. [1] ¶ 63.

Defendant Leadec is an international industrial services company that "was an employer, or alter ego/joint-employer of all Plaintiffs and all members of the proposed class" at "most times relevant" to the Complaint. Doc. [1] ¶¶ 21, 24. In 2017, Leadec purchased Voith Industrial Services, Inc., the direct employer of Plant's custodial personnel from on or about 1995 through 2013. *Id.* ¶ 23. Leadec was the "direct employer of custodial personnel at the" Plant from 2017 to 2022. *Id.* ¶ 22.

The named Plaintiffs represent ten women who worked as a custodial employees for Defendant at the Plant. *Id.* ¶ 62. Plaintiff Rita Collins is the personal representative of her deceased daughter Rita Williams, who worked as an industrial custodian for Defendant during the relevant time period, and the other nine Plaintiffs personally worked for Defendant. *Id.* ¶¶ 39, 62.

Plaintiff Amanda Meyer Simon worked as an industrial custodian for Leadec from October 6, 2008, until September 30, 2020. *Id.* ¶ 31. She alleges that she was repeatedly subjected to sexual propositions, sexual comments, catcalling, and actual and threated retribution for not participating in sexual conduct. *Id*. She began complaining of harassment in summer 2011 to her on-site Human Resources (HR) personnel eight years before Leadec fired the "three primary instigators." *Id.* She states that she developed post-traumatic stress disorder (PTSD) from the harassment. *Id.*

Plaintiff Cheryl Sronce worked as an industrial custodian for Leadec at the Plant from 2012 until Leadec lost its contract with GM in 2022. *Id.* ¶ 32. She alleges that she experienced unwelcome touching, sexual propositions and innuendos, she observed male co-workers publicly rubbing female co-workers' breasts and buttocks. *Id.* ¶ 32. For example, she states that DeAngelo Presberry pressured her to have sex with him and screamed at her in front of other co-workers when she declined. *Id.* Sronce further alleges that she reported this sexual harassment to management and that Presberry raised false charges against her in an attempt to vote her out of her union office. *Id.* Sronce states that she now suffers from severe PTSD from the harassment and retaliation. *Id.*

Plaintiffs Lytishia Jones and Tracey Edwards both worked as industrial custodians for Leadec and experienced unwelcome touching, sexual propositions and innuendo, and similarly observed male co-workers publicly rubbing female co-workers' breasts and buttocks. *Id.* ¶¶ 33-34. Jones worked at the Plant from August 30, 2016, until 2022, and Edwards worked at the

Plant from July 6, 2017, until she was laid off in March 2020. *Id.* Plaintiff Jones states that she once found a victim of sexual assault unconscious in a restroom while at work. *Id.* ¶ 33. Jones reports that she complained about harassment by filling hotline complaints, texting the corporate HR management, and complaining to on-site supervisors and HR management. *Id.* Jones alleges that she now suffers from PTSD and other nervous disorders from the hostile work environment and retaliation. *Id.* Edwards states that she complained about the harassment to on-site HR, corporate HR management, and facility management orally and in writing. *Id.* ¶ 34.

Plaintiff Leanna Hill worked as an industrial custodian, then a Team Lead, and finally a first-line supervisor for Leadec and its predecessors/successors at the Plant from March 2015 until January 10, 2019, when she was fired. *Id.* ¶ 35. She reports specific lewd and offensive statements made to her by Presberry while at work and states that Presberry touched her inappropriately, including repeatedly on her thigh and by throwing her up against a wall in front of a group of employees. *Id.* Hill states that she complained about sexual harassment to on-site supervisors, HR, and to corporate HR Manager Carole Franco. *Id.* She alleges that she also complained about the retaliation one month before she was discharged. *Id.*

Plaintiff Sarah Jackson worked as an industrial custodian for Leadec at the Plant from 2016 until March 2019, when she states that she quit after complaining of sexual harassment. *Id.* ¶ 36. Jackson states that she was repeatedly sexually propositioned and told that she could not get various benefits, including her seniority benefits, tuition reimbursement, or a promotion, unless "she went through Presberry." *Id.* Jackson complained orally and in writing to on-site Financial Manager Robin Rains[4] in approximately August 2019 and states that Rains forwarded the complaint to Corporate HR Manager Carole Franco. *Id.* Jackson reports that Rains was fired in September 2019 for supporting the women who reported sexual harassment. Jackson states that she experienced retaliation, which persisted until the day she quit. *Id.*

Plaintiff Jessica McGlown worked as an industrial custodian for Leadec at the Plant from November 16 until January 11, 2018, when she was fired "for absenteeism related to being sexually harassed." *Id.* ¶ 36.[5] McGlown states that she was sexually propositioned, stalked, and that after she rejected Presberry, he called her a "slut," a "whore" and "got so mad at her that he

[4] Rains brought suit alongside the named Plaintiffs but voluntarily dismissed her claims, Doc. [19], after Defendant filed a motion to enforce a settlement with her, Doc. [15].

[5] The Complaint contains two paragraphs numbered "36." The Court here refers to the second.

punched a wall, hurting his hand." *Id.* McGlown alleges that she was denied overtime, grievance representation, and other benefits because she would not have sexual relations with Presberry. *Id.* McGlown states she complained to on-site human resource management more than ten times. *Id.* "She did not file written complaints because Presberry" trained employees on the sexual harassment policy and all written complaints went through him. *Id.* After McGlown was discharged, she reported that Presberry told her she would get her job back if she "screw[ed]" him. *Id.*

Plaintiff Lisa Trent worked as an industrial custodian for Leadec at the Plant from 2008 until March 2024. *Id.* ¶ 37. Trent alleges that Presberry made sexually inappropriate statements to her, including in 2016, "[i]f I knew you had dated a black man, I'd have tried to Fuck you a long time ago." *Id.* Trent states that she promptly complained to a male Leadec supervisor, who responded, "if no one else saw it or heard it, it didn't happen." *Id.* She alleges that she complained again to Cheryl Hertfelder about the harassment in January 2019. *Id.*

Plaintiff Sarah Ward worked as an industrial custodian for Leadec at the Plant from February 7, 2014, to July 25, 2018. *Id.* ¶ 38. Ward asserts that she experienced repeated sexual propositions, innuendo, and stalking. *Id.* Ward alleges that Presberry repeatedly approached her, would grab his crotch, ask if she wanted some "dick" and made daily sexualized comments to her, such as complimenting her buttocks. *Id.* Ward states that she complained about the sexual harassment and wrote up complaints for other women, including photographs and other evidence and put the evidence in her locker. *Id.* She further alleges that Presberry, with the help of Leadec management and security, removed Ward's personal lock to gather the evidence from her locker and destroy it. *Id.* When Ward rejected Presberry's advances, she reported that he damaged two of her cars and stalked her. *Id.* Ward asserts that she had to move residences multiple times and now suffers from PTSD due to Leadec's hostile work environment. *Id.*

Plaintiff Collins is the personal representative of her deceased daughter, Rita Williams, who worked as an industrial custodian for Defendant from mid-2018 through late 2019. *Id.* ¶ 39. The Complaint states that Williams experienced sexual harassment, proposition, and stalking, and that multiple men at the Plant sexually assaulted her and left her unconscious and undressed in a women's restroom. *Id.* Williams allegedly developed PTSD and was discharged due to issues caused by the sexual harassment. *Id.*

The Complaint alleges that other putative class members experienced the same types of harassment as Plaintiffs, including unwelcome touching, sexual epithets and comments, threats of sexual violence, and sexual assault. *Id.* ¶ 41. Male employees stalked putative class members who had complained, keyed their vehicles, and got them disciplined or fired. *Id.* ¶ 43. Putative class members complained to Defendant in person, by hotline, and in writing, but many supervisors refused to investigate the complaints or submit them to Corporate HR. *Id.* ¶¶ 44-45. When supervisors did report such complaints, Defendant failed to take timely corrective action and exposed the women to retaliation by revealing their identities to their harassers. *Id.* ¶ 46. Defendant also retaliated against local management who reported sexual harassment to the corporate office and deterred employees from filing written complaints, lost the complaints, and/or gave the harassers access to the complaints. *Id.* ¶¶ 46, 49.

Taking Plaintiffs' allegations as true, sexual harassment and assault were pervasive at the Plant. *Id.* ¶ 4. Male co-workers in positions of power routinely groped Plaintiffs, made sexual comments and gestures, threatened and committed sexual violence against them, offered them benefits for sexual favors, and threatened repercussions if they declined. *Id*. The sexual harassment and retaliation occurred on near-daily basis from at least summer 2011 to at least September 2019, with retaliation continuing beyond September 2019. *Id.* ¶ 3. The harassment was open and obvious and perpetrated in part by management, and female employees complained about it. *Id.* ¶ 9. Despite being on notice, Defendant failed to take steps to timely curtail the harassment, and Defendant's on-site and corporate managers did not respond promptly or adequately to complaints. *Id.* ¶¶ 9-10. Only after eight years of deterring, losing, or failing to investigate complaints did Defendant investigate and fire three of the offending male employees in 2019. *Id.* ¶ 49. During his employment, one of the offenders had fielded all written sexual harassment complaints and trained employees on the sexual harassment policy. *Id.* ¶ 36. After they complained about harassment, Plaintiffs were given adverse job assignments, denied promotions, disciplined, threatened, stalked, saw their property damaged, and/or were fired or effectively fired. *Id.* ¶ 11. In sum, Plaintiffs allege that Defendant created a hostile work environment for women employees, particularly as compared to men in identical roles. *Id.* ¶¶ 8, 9.

Plaintiffs bring claims for a hostile work environment and retaliation, asserting that Defendant's failure to curtail the harassment and retaliation at the Plant for eight years was a

pattern or practice of discrimination that violated Title VII of the Civil Rights Act. Doc. [1] ¶¶ 71-72, 77-78. They seek back pay and benefits as appropriate, compensatory damages for physical and emotional distress and humiliation, that the Court "order Defendant to adopt and implement policies, procedures, and practices that will curtail harassment of women working at other Leadec locations with the United States." *Id.* at 22-23.

**EEOC COMPLAINTS**

Three Plaintiffs filed complaints with the Equal Employment Opportunity Commission (EEOC) regarding the sexual harassment and retaliation at the Plant. Plaintiff Meyer filed a class-wide discrimination and retaliation charge with the EEOC on September 27, 2019, received a favorable determination letter from the investigation on September 13, 2023, and received her Notice of Right to Sue on May 1, 2025, following failed conciliation. *Id.* ¶ 25. Plaintiff Sronce filed a class-wide discrimination and retaliation charge on October 17, 2019, and received her Notice of Right to Sue on May 1, 2025. *Id.* ¶ 26. Plaintiff Jones filed her class-wide discrimination and retaliation charge on October 3, 2019, and also received her Notice of Right to Sue on May 1, 2025. *Id.* ¶ 27. In their charges, all three Plaintiffs alleged that the sexual harassment affected them and other female co-workers. Doc. [1-3]; Doc. [1-4]; Doc. [1-5].

Plaintiff Simon alleges in her Charge of Discrimination form that harassers "have constantly verbally sexually harassed female coworkers (including myself)." Doc. [1-3] at 2. She also alleges that Defendant was aware of this behavior, but did nothing and denied it for years, allowing retaliation to occur and further sexual harassment. *Id.* Plaintiff Sronce alleges that harassers "have engaged in pressuring new employees and union members (including me) to perform sexual favors for them in order to receive union protection. They have constantly verbally sexually harassed female coworkers, and, in fact, allegedly raped an employee in GM's locker room." Doc. [1-4] at 2. Plaintiff Jones made the same allegations in her EEOC complaint. Doc. [1-5] at 2.

All three received Notice of Right to Sue letters which each found "Leadec subjected a class of female employees to unwelcome sexual advances . . . as well as other verbal and physical conduct of a sexual nature," and that such conduct "explicitly and implicitly affected Class Member's employment, unreasonably interfered with Class Member's work performance, and created an intimidating, hostile, and offensive work environment." *Id.* ¶ 28. The letter also found that "after Class Members complained of sexual harassment . . . they were harassed and

intimidated in retaliation for having participated in protected activity." *Id.* The letters found that evidence confirmed Leadec "was aware of the inappropriate conduct of a sexual nature, harassment, and other retaliatory actions, but failed to take prompt and appropriate corrective action to cease the behavior in the workplace." *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1091 (8th Cir. 2021) (citing *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)). "Striking a party's pleadings, however, is an extreme and disfavored measure." *BJC Health Sys.*, 478 F.3d at 917 (citing *Stanbury Law Firm, P.A. v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000)).

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to give "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Title VII claims are dismissed under Rule 12(b)(6) when plaintiffs fail to exhaust their administrative remedies. *See Shannon v. Ford Motor Co.*, 72 F.3d 678, 684 (8th Cir. 1996); *Barber v. Halverson*, 2021 WL 5998573, at *2 n.5 (D. Minn Sept. 15, 2021) (Plaintiff "failed to affirmatively plead exhaustion and therefore cannot move forward with his claims.").

## DISCUSSION

### I. <u>Defendant has not met the standard to strike class allegations from the Complaint.</u>

Defendant argues that Plaintiffs' class allegations must be stricken because, as pleaded, Plaintiff's claims cannot meet the requirements of Federal Rules of Civil Procedure 23(a) or (b). Doc. [14] at 7. The Eighth Circuit has advised that a "district court may grant a motion to strike class-action allegations prior to the filing of a motion for class-action certification" if it is "apparent from the pleadings that the class cannot be certified" and "permitting such allegations to remain would prejudice the defendant." *Donelson,* 999 F.3d at 1092. But "[j]udges in the

Eighth Circuit . . . typically deny as premature motions to strike class allegations filed significantly in advance of any possible motion for class certification." *Cocciolillo v. SmartMatch Ins. Agency, LLC*, 821 F.Supp.3d 998, 1003 (W.D. Mo. 2026) (quoting *In re Folgers Coffee*, 2021 WL 7004991, at * 4 (W.D. Mo. Dec. 28, 2021) (citing cases)). "It is a rare case in which it is clear from the pleadings that plaintiffs may not proceed as a class." *Simpson v. Boeing Co.*, 27 F.Supp.3d 989, 995 (E.D. Mo. 2014) (quoting *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 269 (W.D. Wis. 2013)). Defendant has not persuaded the Court that this is such a case.

**A. It is not apparent from the Complaint that Plaintiffs cannot satisfy Rule 23(a).**

Federal Rule of Civil Procedure 23(a) provides that:

> one or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Defendants urge the Court to find that it is apparent from the Complaint that Plaintiffs' proposed class cannot meet the second, third, or fourth requirement of Rule 23(a). Doc. [14] at 7-10. The Court considers each of Rule 23(a)'s requirements in turn.

***1. "[T]he class is so numerous that joinder of all members is impracticable."***

Plaintiffs allege that Defendant employed "hundreds of women" during the relevant time period and seek to certify a class of themselves and "all other similarly situated women." Doc. [1] ¶ ¶ 1-2. Because Defendant does not challenge the numerosity of the putative class, it is not addressed here. *See* Doc. [20] at 2.

***2. "[T]here are questions of law or fact common to the class."***

To satisfy Rule 23(a)(2), Plaintiffs' "claims must depend upon a common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of

the litigation." *Id.* (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131-132 (2009)).

Defendant argues that Plaintiffs' class allegations cannot be resolved by common answers because their sexual harassment claims are based on "*individual* stories of how they believe they were sexually harassed or retaliated against, by whom," whether it actually occurred, how severe it was, and the effect of the harassment on each woman's employment. Doc. [14] at 9. Notably lacking from Defendant's argument is a citation to any case articulating the maxim that sexual harassment and retaliation claims are categorically ineligible to be pursued on a class-wide basis. Defendant also fails to cite a single example of any court striking class-wide allegations on that basis before discovery is even conducted. The only case Defendant does cite concedes *in the portion quoted by Defendant* that individual Title VII claims by employees of the same company may be suitable for class litigation if they "depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor." *Dukes*, 564 U.S. at 350, quoted at Doc. [14] at 8.

It is by no means apparent from the pleadings that Plaintiffs will be unable to show that their claims depend on such a common contention. Per Plaintiffs, the gravamen of their lawsuit is Defendant's "conduct in failing to prevent harassment, rather than the conduct of individual harassers." Doc. [20] at 4. The Complaint clearly alleges that Defendant, through its supervisors and human resources professionals, ignored and enabled pervasive harassment and retaliation at the Plant. Doc. [1] ¶ 11. Each of the individual Plaintiffs alleges with specificity that complaints to supervisors or human resources were ignored, mishandled, or worse. *Id.* ¶¶ 32–38. The Complaint makes similar allegations on behalf of the unnamed class members. *Id.* ¶¶ 44-46, 49. Such allegations sufficiently state "common contentions" among class members' claims for the purposes of the pleading stage. *See, e.g.*, *Simpson v. Boeing Co.*, 27 F.Supp.3d at 995 (class certification plausible at pleadings stage when plaintiff alleged racial discrimination in hiring at specific locations in the St. Louis area).

### 3. *"[T]he claims or defenses of the representative parties are typical of the claims or defenses of the class."*

Defendant also argues, "[f]or the same reasons," that "[s]exual harassment and retaliation claims brought on a class-wide basis are not typical because each person's experiences of alleged harassment and retaliation are individualized." Doc. [14] at 10. Again, Defendant cites no case

articulating the principle it invites the Court to apply. And again, the only case Defendant does cite contains language that tends to undermine its argument. *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996) ("The [typicality] burden is fairly easily met so long as other class members have claims similar to the named plaintiff." (internal quotation marks and citation omitted)).

Claims are typical of a class when there is "significant proof that an employer operated under a general policy of discrimination" that manifested itself in "the same general fashion." *Dukes*, 564 U.S. at 353 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Ries v. McDonald's USA, LLC*, 2021 WL 6133437, *13 (W.D. Mich. Dec. 29, 2021) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). Named Plaintiffs all allege pervasive sexual harassment and retaliation at the Plant, with many Plaintiffs naming the same perpetrator(s) and all alleging that complaints to authorities at the Plant were ignored, mishandled, or worse. Doc. [1] ¶¶ 2, 11, 31, 32–38. Particularly given the limited scope of the proposed class—female employees who worked at the Wentzville General Motor Plant for Defendant in either a custodial or managerial role from 2011 to 2022, *id.* ¶ 61—it is not apparent from the pleadings that Plaintiffs' claims are atypical of class members' claims. *See, e.g.*, *Cruz v. TMI Hospital, Inc.*, 2015 WL 6671334, at *8 (D. Minn. Oct. 30, 2015) (certifying class where "all of the proposed class members held the same job (housekeepers), worked at the same location (the Fairfield in Bloomington), and were supervised by the same person (Ms. Ochoa).").

#### 4. *"[T]he representative parties will fairly and adequately protect the interests of the class."*

"'The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Simpson*, 27 F.Supp.3d at 995 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Defendant argues that, because Plaintiffs Simon and Jones allege that two of their female supervisors retaliated against them, a conflict of interest exists between the proposed representatives and those they seek to represent. Doc. [14] at 10. Plaintiffs respond that the argument ignores the proposed subdivision of the class and is premature. Doc. [20] at 7.

Plaintiffs seek to certify the class of all female employees as two subclasses: (1) bargaining unit custodial employees and (2) on-site non-bargaining unit managerial employees. Doc. [1] ¶¶ 2, 61. All named Plaintiffs fall into the first subclass, and Plaintiffs propose Hill as the representative as the second subclass, as she was promoted to a management position after beginning as an industrial custodian. *Id.* ¶¶ 2, 61-63. Defendant posits a conflict of interest because some female supervisors are implicated in certain named Plaintiffs' allegations of retaliation, but that claim appears to be wholly speculative at this stage. Although it is possible that discovery will uncover some conflict of interest among class members, *see Van v. Ford Motor Co.*, 332 F.R.D. 249, 285 (N.D. Ill. 2019) (denying class certification because some members of class participated in misconduct against the class), it is not "apparent from the pleadings that the class cannot be certified." *Donelson*, 999 F.3d at 1092 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1383 (3d ed.)).

**B. It is not apparent from the Complaint that Plaintiffs cannot satisfy Rule 23(b)(3).**

Defendants also argue that Plaintiffs cannot satisfy Federal Rule of Civil Procedure 23(b)(3),[6] which provides that a class may be certified where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Defendant argues that Plaintiffs' claims do not satisfy Rule 23(b)(3) because "each class member's individualized damages argument will dominate the analysis of each class member's claims." Doc. [14] at 13. That argument rests on its earlier contention that "there are no common questions of fact and proof of both the sexual harassment and retaliation claims and defenses will require evidence that varies with each class member." *Id.* at 12. The Court has rejected that premise and accordingly rejects the proposed corollary that Plaintiffs "cannot meet the predominance requirement." *Id.*

"At this stage, it is not clear whether individual or common issues predominate. Indeed, '[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damages issues.'" *Simpson*, 27 F.Supp.3d at 995 (quoting

[6] Because Defendant fails to show that Plaintiffs cannot satisfy Rule 23(b)(3), the Court does not consider whether Plaintiffs may proceed under Rule 23(b)(1) or Rule 23(b)(2), which the parties apparently dispute but Plaintiffs do not argue. *Compare* Doc. [20] at 7-8, *with* Docs. [14] at 11-13; [27] at 6-9.

*Roberts v. Source for Pub. Data*, 2009 WL 3837502, at *6 (W.D. Mo. Nov. 17, 2009) (quoting *Newberg on Class Actions*, § 4.25))). It is not clear from the pleadings that Rule 23(b)(3) will prevent Plaintiffs from certifying a class.

**II. The Court does not consider whether the named Plaintiffs who did not exhaust their administrative remedies would have to be dismissed absent the class allegations.**

Defendant also argues that, without the class allegations, the claims of the seven named Plaintiffs who failed to file EEOC complaints are subject to dismissal for failure to exhaust their administrative remedies. Doc. [14] at 14. Because the Court chooses not to strike the class allegations, it does not reach that issue.

## CONCLUSION

Because Defendant has not shown that this is the "rare case in which it is clear from the pleadings that plaintiffs may not proceed as a class," *Simpson*, 27 F.Supp.3d at 995 (quoting *Ladik*, 291 F.R.D. at 272), the Court exercises its "liberal discretion" to deny the motion to strike Plaintiffs' class allegations, *Donelson*, 999 F.3d at 1091. And because the argument for dismissal of certain individual Plaintiffs' claims is contingent on the striking of the class allegations, it is likewise denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Strike Plaintiffs' Class Allegations and to Dismiss the Individual Claims of Eight Plaintiffs, Doc. [13], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Enforce Settlement with Plaintiff Robin Rains, Doc. [15], is **DENIED as moot** given her voluntary dismissal, Doc. [19].

Dated this 30th day of September, 2026.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE